IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REGINA HARRIS AND DONNIE HARRIS, )<br>)<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>NATIONAL RAILROAD PASSENGER )<br>CORPORATION a/k/a AMTRAK, and )<br>GILBREATH TANK TRUCKS, INC., )<br>)<br>    Defendants. ) | Case No. CIV-11-278-D |

## **O R D E R**

Before the Court is Defendant National Railroad Passenger Corporation's Corrected Motion for Summary Judgment Pertaining to Claims of Causing or Contributing to the Collision [Doc. No. 63]. Defendant National Railroad Passenger Corporation a/k/a AMTRAK ("Amtrak") was permitted to amend a prior motion for partial summary judgment, and now seeks judgment pursuant to Fed. R. Civ. P. 56 on all claims asserted in the Complaint.[1] *See* Order of April 4, 2013 [Doc. No. 63]. Plaintiff timely responded in opposition to the Corrected Motion. Defendant Gilbreath Tank Trucks, Inc. ("Gilbreath") elected to stand on its response to Amtrak's original motion, and Amtrak similarly stood on its original reply brief. No additional briefing has been requested. Thus, the Corrected Motion is fully briefed and at issue.

Plaintiff Regina Harris seeks to recover damages for personal injuries allegedly suffered aboard a passenger train operated by Amtrak. Her spouse, Plaintiff Donnie Harris, asserts a claim for loss of consortium. Plaintiffs' claims arise from a collision between Amtrak's commuter train, commonly known as the Heartland Flyer, and a semi-tractor trailer truck owned and operated by

---

[1] Neither of Amtrak's motions address its cross-claim for property damage.

Gilbreath. The Complaint alleges that Mrs. Harris was injured by two impacts, first when the train and truck collided and again when Amtrak's employees moved the passenger cars away from the damaged locomotive. As pertinent here, the Complaint asserts two claims against Amtrak: Count I, negligence in failing to prevent the train-truck collision; and Count II, negligence in causing Mrs. Harris to be injured by the second impact.[2] By the Corrected Motion, Amtrak seeks summary judgment in its favor on both claims.

## Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). A district court has discretion to go beyond the cited materials and consider other

---

[2] The Complaint also asserts two claims against Gilbreath: Count III - negligence of its employee in causing the collision; Count IV - negligence *per se* of its employee under the Texas Transportation Code.

materials in the record, but it is not required to do so. *See Adler*, 144 F.3d at 672; Fed. R. Civ. P. 56(c)(3). The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[3]

On March 13, 2009, a collision occurred at a railroad crossing in Gainesville, Texas, between a locomotive owned and operated by Amtrak and a truck driven by Gilbreath's employee, Mark Hermes. The crossing was protected by advanced warning signs and reflectorized crossbucks that were installed in a federally-funded project. The locomotive was outfitted with chime horns and an incandescent lamp that conformed with federal regulations. The locomotive was traveling 56 miles-per-hour at the time of the collision on track that, according to federal regulations, allowed a train speed of 80 miles-per-hour for passenger trains. The train's event recorder reflects an engineer-initiated application of emergency brakes before the collision, and activation of the horn for approximately 15 seconds and within 1,234 feet prior to the emergency braking. Mr. Hermes failed to stop for the train and drove his truck across the tracks, causing the collision. He received traffic citations for driver inattention, failure to heed a warning sign, and failure to stop for a train.

The parties opposing the Corrected Motion, and Amtrak in its reply, present additional facts. After the train collided with the truck, an Amtrak conductor instructed the engineer, Shane Brawner, to separate the passenger cars from the damaged locomotive due to a fuel leak. Using a second, undamaged locomotive, Mr. Brawner pulled the train cars away from the damaged locomotive to

---

[3] Plaintiffs and Gilbreath admit all facts stated by Amtrak in its Corrected Motion. These facts concern only the initial train-truck collision. As discussed *infra*, the parties' arguments focus on the second impact, and thus many of the facts presented by the Corrected Motion are irrelevant to the issues presented for decision. Only relevant facts are recounted here.

the opposite side of the crossing.  Mr. Brawner estimated that he did this "around an hour" after the collision.  *See* Brawner Dep. 51:21-52:2.  No passengers were unloaded until after the train had been moved.

Mrs. Harris testified there were two separate events that caused her to fall to the floor of the passenger car in which she was riding, and she experienced a "second jolt" after the initial collision. *See* Regina Harris Dep. 209:11-25.  Amtrak disputes this testimony, arguing that it is self-serving and contradicted by the testimony of two other passengers whom Plaintiffs have listed as witnesses. Amtrak presents the affidavits of these witnesses, Cheryl Taylor and Yvonne Rockwell, both of whom state they do not recall a second jolt or sudden movement; they recall only the initial impact with the truck.  Also, Ms. Rockwell states she only saw Mrs. Harris fall down once.

## Discussion

No party has provided any facts or evidence to suggest that any negligent act or omission by Amtrak caused the initial train-truck collision.  Plaintiffs do not dispute that Amtrak is entitled to summary judgment on Count I.  The sole issue presented for decision by the Corrected Motion is whether Amtrak is entitled to summary judgment on Count II regarding a second impact.

"In the absence of regulation by Congress, the liability of a common carrier to an interstate passenger is to be determined in accordance with the law of the state where the injury occurs."  *Huff v. Louisville & Nashville R.R. Co.*, 198 F.2d 347, 348 (5th Cir. 1952).[4]  Amtrak relies on federal safety regulations regarding warning devices, locomotive equipment, and train speed to preempt any

---

[4] Although Plaintiffs invoke diversity jurisdiction in their Complaint, the law is clear that federal jurisdiction of any suit against Amtrak exists under 28 U.S.C. §§ 1331 and 1349 "because Congress created Amtrak and the United States owns over fifty percent of its stock."  *See Henderson v. National R.R. Passenger Corp.*, 412 F. App'x 74, 77, (10th Cir. 2011) (citing federal statutes and authorities).  Thus, Plaintiffs' action is governed by federal law except to the extent federal law applies state law principles.

state law claims regarding the collision.  It does not contend, however, that any of these regulations are implicated by Count II.  With regard to passenger safety, Texas law, like the laws of many states, holds common carriers to a high standard of care.  The well established Texas standard is stated as follows:

> Railroad companies . . . are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances.

*Gulf, Colo. & Santa Fe Ry. Co. v. Conley*, 260 S.W. 561, 562 (Tex. 1924) (internal quotation and citations omitted).  Thus, for example, a common carrier might be held liable for "failing to anticipate injuries and to prevent them by not permitting [a suitcase] to be carried into the passenger area of the bus," *Fuller v. Southwestern Greyhound Lines, Inc.*, 331 S.W.2d 455, 459 (Tex. Civ. App. 1960); or by failing to "reasonably take cognizance of the habits, customs, and practices followed generally by its passengers insofar as these actions present hazards to its business invitees, and . . . [failing to] take reasonably appropriate steps to avoid or minimize likely harm," *Garrett v. American Airlines, Inc.*, 332 F.2d 939, 942 (5th Cir. 1964).  With regard to a sudden stop or jolt, a passenger may assume "the natural consequences of normal jerks as part of a ride in a public conveyance, but a 'sharp, unusual and violent' stop is evidence from which a legitimate inference of negligence may be inferred." *Wichita Transp. Corp. v. Braly*, 150 F.2d 315, 317 (10th Cir. 1945) (citations omitted).

In this case, the Court finds that the facts presented by Plaintiffs, viewed in the light most favorable to them, may be sufficient to establish a breach of Amtrak's high standard of care toward Mrs. Harris.  The credibility of her testimony concerning a "second jolt" is not a matter to be resolved by summary judgment, particularly where the allegedly conflicting witnesses merely state

they do not recall the jolt to which she testified; neither states positively that it did not occur. In addition, Mrs. Harris claims that she was severely injured in the initial collision; it is undisputed that she was transported to a local hospital by emergency medical responders. *See* Corrected Motion, Ex. 1 [63-1], Texas Peace Officer's Crash Report. "It is quite elementary that a sick or an aged person . . . , where the infirmity is brought to the attention of the carrier, is entitled to a greater quantum of care than one in good health and under no disability." *Conley*, 260 S.W. at 563. The summary judgment record is silent regarding whether Amtrak was aware of injured passengers on the train after the collision, such that Amtrak had a greater duty of care to avoid further injury.

In short, the Court finds that Amtrak has failed to present facts from which to conclude it is entitled to judgment as a matter of law, and that Plaintiffs have demonstrated a genuine dispute of material facts as to whether Amtrak was negligent in its conduct after the initial collision.

**Conclusion**

For these reasons, the Court finds Amtrak is entitled to summary judgment on Count I of the Complaint but that a genuine dispute of material facts precludes summary judgment on Count II.

IT IS THEREFORE ORDERED that Defendant National Railroad Passenger Corporation a/k/a Amtrak's Corrected Motion for Summary Judgment Pertaining to Claims of Causing or Contributing to the Collision [Doc. No. 63] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 28th day of October, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE